UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| CALEB R. STURGE, | Civil No. 07-499 (JRT/JJG) |
| Plaintiff, | |
| v. | FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT |
| NORTHWEST AIRLINES, INC., | |
| Defendant. | |

Richard T. Wylie, **ATTORNEY AT LAW**, 701 Fourth Avenue South, Suite 500, Minneapolis, MN 55415, for plaintiff.

Timothy R. Thornton, Molly M. Borg, and Timothy G. Gelinske, **BRIGGS & MORGAN, P.A.**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for defendant.

Plaintiff Caleb R. Sturge was discharged by defendant Northwest Airlines ("Northwest") for violating company drug policies. Following his termination, plaintiff filed two grievances related to post-employment benefits. Northwest has not responded to those grievances and has refused Sturge's request to submit them to arbitration. Sturge filed this lawsuit seeking to compel Northwest to arbitrate. This case was tried before the Court on July 30, 2008. The Court received final written submissions from the parties on October 16, 2008. Based on the entire record and proceedings, the testimony at trial, and the arguments of counsel, the Court now enters the following Findings of Fact and Conclusions of Law.

# FINDINGS OF FACT

1.   All of the Findings of Fact set forth herein are undisputed or have been proven by a preponderance of the evidence.

2.   To the extent that the Court's Conclusions of Law include what may be considered Findings of Fact, they are incorporated herein by reference.

## A.   The Parties

3.   Northwest is an air carrier as defined by the Railway Labor Act ("RLA"). 45 U.S.C. § 181.

4.   Sturge was employed by Northwest as a pilot until October 31, 2003. Sturge, like all other Northwest pilots, is a member of the Air Line Pilots Association ("ALPA").

## B.   The Collective Bargaining Agreement

5.   ALPA represents the pilots "and in their behalf negotiate[s] and conclude[s] a[] [collective bargaining] agreement with [Northwest] as to hours of labor, wages and other employment conditions covering the pilots in the employ of [Northwest] in accordance with the provisions of the Railway Labor Act."  (Def's Ex. 2, § 1(A).)

6.   This collective bargaining agreement ("CBA") establishes a comprehensive process for resolving disputes between pilots and Northwest.  The process for the filing and resolution of pilot grievances is described in Section 20:

> Grievances . . . must be filed with the proper officer of [Northwest] within 120 days after the pilot reasonably would have had knowledge of the grievance.

\* \* \*

A request for an investigation and hearing setting forth a full and complete statement of the facts out of which such grievance arose, the provision or provisions of the Agreement upon which the grievance is based and a specific request for relief shall be filed with the Managing Director of Flight Administration, or his designee, with a copy to the Vice President of Flight Operations.

\* \* \*

Such investigation and hearing shall be held by the Managing Director of Flight Administration, or his designee, on the third Friday of the month following the month in which the grievance was filed (unless a different date is mutually agreed upon). [Northwest] shall issue its written decision no later than 15 days following the date of the hearing and will send a copy thereof to the pilot, the MEC Grievance Chairman, the LEC Grievance Chairman and ALPA Representation Office MSP.

(*Id.*, § 20 (A) – (C).)

7. Section 20 of the CBA also explains what occurs if Northwest does not address a grievance:

If any decision required to be made by [Northwest] under the provisions of this section is not announced within the time limit prescribed herein, it will be deemed a denial and, at the option of [ALPA], the dispute may be submitted to the "Northwest Airlines Pilots' System Board of Adjustment," with the total expenses and compensation of the neutral member and court reporter to be borne by [Northwest].

(*Id.*, § 20(E).)

8. Section 21 of the CBA explains the role of the System Board of Adjustment ("System Board"):

The [System] Board shall consider any dispute properly submitted to it by the President of [ALPA] within the time limits provided in . . . this Agreement. The [System] Board shall also consider any dispute properly

> submitted to it by the Vice President of Labor Relations-Flight of [Northwest].

(*Id.*, § 21(D).)

    9.    In a June 4, 2002, Letter of Agreement between Northwest and ALPA, the company and the union "agreed to begin a process in June 2000 to eliminate the current backlog" of grievances. (Pl.'s Ex. 2 at 31-132.) The letter goes on to describe that process, stating:

> With respect to any non-discharge grievance filed after September 1, 2000, it is the mutual goal of the parties to prevent the accumulation of a backlog of outstanding grievances by implementing the following grievance prevention and resolution program as a supplement to Sections 19 and 20 of the [CBA][.]
>
> * * *
>
> The parties recognize that the [CBA] permits individual pilots to file individual grievances. All individual, non-discharge grievances that are not settled shall be subject to the arbitration commitments set forth in subparagraph A.2 above and Paragraph B. below.

(*Id.* at 31-132 to -133) Subparagraph A.2 sets forth various details as to how and when grievances would be scheduled. (*Id.* at 31-132.)[1] The reference to "Paragraph B." appears to have been a typographical error, as there is no subheading "B" in the remainder of the letter. (*Id.* at 31-133 to -135.) In a later passage the letter also states:

---

[1] The parties note that approximately one year after Sturge's grievances were filed, this letter was amended and incorporated into the CBA as Letter 2000-03A. (*See* Pl.'s Ex. 44.) In that version of this material, this passage appears to indicate that individual, non-discharge grievances are subject to the full range of arbitration commitments set forth throughout the letter. (*Id.* at § 4.) Nothing in Letter 2000-03A, however, goes any further than the June 4, 2002, letter toward indicating a change in ALPA's role as a gate-keeper for pilots seeking to arbitrate a denied grievance before the System Board. As is further explained in the Conclusions of Law given below, this is the central issue before the Court. Because the alterations in Letter 2000-03A do not touch on this issue, no further consideration of that letter is necessary.

> Any grievances not resolved at this point will be assigned to the next scheduled arbitrator who has not yet been assigned a case. Each party will have the right three times per year to pass a case to either the next open arbitrator or the second subsequent open arbitrator, in the chronological order of scheduled arbitration dates.

(*Id*. at 31-134.) The letter provides no additional explanation of the phrase "at this point."

### C.  Sturge's Employment and Termination

10.  Following allegations that Sturge had received a controlled substance delivered through Fed Ex, he was terminated by Northwest. (Def's Ex. 1 at 9-10.) Sturge grieved his termination pursuant to the CBA, and ALPA ultimately appealed his termination to the System Board. (*See* Def.'s Ex. 1.) On October 5, 2004, the System Board upheld Sturge's termination. (*Id*. at 15.)

11.  On November 22, 2004, Northwest sent Sturge a letter indicating that it had determined he had a "disability," and that he was entitled to a "disability retirement pension." (Pl.'s Ex. 5.) However, the letter also included the following passage:

> Due to your October 30, 2003 discharge from employment for just cause (as determined by the NWA/ALPA System Board of Adjustment), you and your otherwise eligible family members are not eligible for Retirement Pass Privileges.

(*Id*.) "Retirement Pass Privileges" are benefits typically given to retired Northwest pilots allowing reduced rate transportation on Northwest flights. (*See* Def's Ex. 9A.)

12.  Under Section 22.D.3 of the CBA, pilots "receiving a Disability Retirement Pension under the Pilots' Pension Plan" retain a limited right to return to active duty upon demonstrating their fitness to fly. (Def.'s Ex. 2 at 22-2 to -3.)

13. Following Sturge's discharge, Northwest determined that he was ineligible to invoke the reinstatement provision in Section 22.D.3 of the CBA because he had been terminated for cause. (*See* Def's Ex. 9A.)

**D.  Sturge's Post-Employment Grievances**

14. On March 22, 2005, Sturge sent two grievances to Northwest challenging its determination that he was ineligible for either pass privileges or reinstatement. (*See* Pl.'s Ex. 6, 7.)

15. On April 5, 2005, ALPA sent a letter to Sturge indicating that it had reviewed his grievance concerning his reinstatement rights, and found "no basis, contractual or otherwise" for his complaint. (Def's Ex. 9A.) ALPA explained that "as a pilot discharged for just cause, you have forfeited your seniority rights and your right to return to duty." (Def's Ex. 9A.)

16. On April 25, 2005, ALPA sent a similar letter addressing Sturge's grievance concerning pass privileges, indicating again that it found "no basis, contractual or otherwise" for his complaint. (*Id.*) ALPA explained that "upon being discharged for cause, the Company exercised its right to revoke your pass privileges, in accordance with its pass policy." (*Id.*)

17. Northwest did not schedule a hearing or otherwise announce a decision on Sturge's grievances within the timeframe set by the CBA.

18. Representatives of ALPA convened on May 4, 2005, to determine whether to pursue Sturge's grievances to the System Board. (*See* Def.'s Ex. 9A.) Sturge declined

to attend this meeting. (*Id.*) On June 22, 2005, ALPA sent a letter to Sturge indicating that "support of your case before the System Board of Adjustment is not warranted." (*Id.*) The letter concludes by stating:

> The bottom line is that you are a terminated pilot fortunate enough to be receiving a disability pension benefit. The termination has not affected your disability pension benefit. It has not. The termination does affect pass benefits and your ability to return to work from a disability retirement.

(*Id.*)

19. Northwest took no further action on Sturge's grievances. Sturge subsequently filed this action seeking to compel Northwest to arbitrate those grievances before the System Board.

## CONCLUSIONS OF LAW

### I.     The Right of Individual Pilots to Invoke the Jurisdiction of the System Board

As this Court previously noted in its ruling on Northwest's motion for judgment on the pleadings, the RLA does not grant Sturge a statutory right to compel arbitration. *See Sturge v. Nw. Airlines, Inc.*, No. 07-499, 2008 WL 835676, at *2 (D. Minn. Mar. 27, 2008); *see also Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608-09 (8th Cir. 2004) ("[P]laintiff contends that the RLA provides airline employees with a statutory right to pursue arbitration individually before an airline's system board of adjustment. We disagree."). In addition, this Court is barred from adjudicating Sturge's grievances on the merits. *See Smith v. Am. Airlines, Inc.*, 414 F.3d 949, 953 (8th Cir. 2005) (noting that a federal court "may not intrude upon the adjustment board's authority by deciding the merits of [a] collective bargaining dispute"). Consequently, the narrow question at issue

in these proceedings is whether the CBA negotiated between the ALPA and Northwest affords Sturge a contractual right to compel arbitration without ALPA's consent.[2] *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability – whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination.").

While courts "interpret collective bargaining agreements in the same way [as] other contracts," technically "collective bargaining agreements are interpreted under federal law." *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral*, 293 F.3d 402, 405 (7th Cir. 2002). Indeed, federal courts are charged with "creat[ing] a body of federal common law that applies to disputes arising out of collective bargaining agreements." *Sweeney v. Westvaco Co.*, 926 F.2d 29, 36 (1st Cir. 1991) (Breyer, C.J.). Accordingly, "[a] court asked to compel arbitration must interpret the relevant language of the parties' collective bargaining agreement in light of well-worn principles of labor contract interpretation." *Balmoral*, 293 F.3d at 405 (internal quotation marks omitted). Those principles include "the rule that where the agreement contains a mandatory arbitration provision, there is generally a presumption in favor of finding arbitrability." *Id.* However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

---

[2] Northwest also argues that as a pilot who had been terminated for cause, Sturge was ineligible to even a file a grievance. Because the Court concludes that even if Sturge was eligible to file a grievance he was ineligible to compel arbitration without the consent of ALPA, the Court need not address this question.

*Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 501 F.3d 912, 916 (8th Cir. 2007) (internal quotation marks omitted).

Northwest argues that the CBA unambiguously limits the right to invoke the jurisdiction of the System Board to two parties: Northwest and ALPA. Thus, Northwest argues, Sturge has no contractual right to compel arbitration without ALPA's consent. Because ALPA has not sought to compel arbitration in this case, Northwest argues that it has no contractual obligation to arbitrate Sturge's grievances.

Northwest's position is strongly supported by several provisions in Section 21 of the CBA. First, and most significantly, Section 21(D)'s list of the parties able to convene the System Board is limited to ALPA and Northwest. (*See* Def.'s Ex. 2, § 21(D).) This limitation is consistent with numerous other passages in Section 21, which are expressly premised on the "Association" (ALPA) and the "Company" (Northwest) constituting the two parties engaged in any arbitration proceedings. (*See id*., § 21(F) (providing specific instructions for how ALPA and Northwest should address their respective appeals to the System Board, without including a provision for individual pilots); § 21(G) ("[T]he Company and Association shall . . . agree upon the selection of a neutral member to sit with the Board"); § 21(H) (noting that Northwest employees may be called as witnesses "at the request of either the Association representatives or the Company representatives"); § 21(I) (explaining that the System Board's decision "shall be final, binding and conclusive between the Company and the Association and anyone they may represent having an interest in the dispute"); § 21(K) ("The Company and the Association shall provide for a court reporter to attend all arbitration hearings.")). No provision in

Section 21 – which is titled "System Board of Adjustment" – references appeals lodged without the consent of either ALPA or Northwest.

As Northwest points out, even more specific guidance is available in Section 20(E) of the CBA. This provision states:

> If any decision required to be made by [Northwest] under the provisions of this section is not announced within the time limit prescribed herein, it will be deemed a denial and, *at the option of [ALPA]*, the dispute may be submitted to the "Northwest Airlines Pilots' System Board of Adjustment," with the total expenses and compensation of the neutral member and court reporter to be borne by [Northwest].

(*Id*., § 20(E) (emphasis added).)  Northwest contends that this provision specifically governs here, because it failed to announce a decision on Sturge's post-employment grievances. In those circumstances, Section 20(E) indicates that arbitration is "the option of [ALPA]." (*Id*.)  This limitation is consistent with the provision in Section 20 that applies when Northwest *does* announce a decision on a grievance. In those circumstances, *"[t]he Association* may appeal the Company's decision in writing to the [System Board] as provided for in Section 21." (*Id*., § 21(D) (emphasis added).)  As noted above, ALPA representatives met to consider submitting Sturge's grievances to the System Board, and declined to do so. Nothing in Section 20 offers any hint that a pilot would be able to compel arbitration in those circumstances.

Northwest's position on the limited jurisdiction of the System Board is further supported by the testimony elicited at trial. Northwest Senior Vice President of Labor Relations Robert Brodin testified that he participated in the negotiation of the CBA, and that it was intended to – and does – limit the right to invoke the jurisdiction of the System

Board to ALPA and Northwest. Patrick Brennaman, an attorney who participated in the CBA negotiations on behalf of ALPA, testified that this was his view of the agreement as well. Brennaman explained that this allows ALPA to serve as a "gate-keeper," to prevent the limited number of arbitration dates from being used on non-meritorious appeals, and to avoid generating arbitration decisions that are harmful to ALPA's interests. In sum, Northwest's view of the restriction on Sturge's ability to invoke the jurisdiction of the System Board is strongly supported by several clear provisions in the CBA and by both of the parties that negotiated it.

Despite this evidence and testimony, Sturge maintains that the CBA provides him with the individual right to compel arbitration. He bases this argument on the June 4, 2002, letter of agreement between Northwest and ALPA, which has now been added as a supplement to the CBA. (*See* Def.'s Ex. 2 at 21-132 to -135.) As noted above, that letter squarely states that individual pilots have a right to file grievances, and then notes that these grievances are subject to the letter's "arbitration commitments." (Def.'s Ex. 2 at 31-133.) The letter also includes a passage generally stating that "any" unresolved grievances would be assigned to the next available arbitrator. (*Id.* at 31-134.) Finally, Sturge contends that a prior retired pilot, John Robinson, was allowed to pursue arbitration without ALPA support.

As an initial matter, the Court notes that the circumstances surrounding Robinson's grievance do not support Sturge's interpretation of the CBA. In his testimony at trial, Robinson agreed that he only had an opportunity to pursue arbitration because ALPA had made the System Board available to him. (*See also* Pl.'s Ex. 29 (explaining

the terms under which ALPA initially allowed Robinson's case to go forward).) In other words, Robinson's experience is entirely consistent with the view of the CBA advanced by Northwest.

As to the text of Letter 51, the Court does not agree that this language is sufficient to demonstrate an expansion of the jurisdiction of the System Board. As Sturge notes, this letter clearly states that individual pilots have the right to file non-discharge grievances. However, the right to file a grievance and the right to invoke the jurisdiction of the system board are dealt with in separate sections of the CBA, and are clearly distinct rights relevant to distinct stages of the CBA's dispute resolution process. (*See* Def.'s Ex. § 20, 21.) In short, clarifying the right of certain individuals to file grievances does not demonstrate a change in restrictions on access to the System Board. As to the additional passages referencing arbitration, the Court notes that none of the passages emphasized by Sturge – or any other passages in either the June 4, 2002, letter or Letter 2000-03A – address whether pilot access to the System Board remained contingent on ALPA's consent. (*See generally* Def.'s Ex. 2 at 31-132 to -135; Pl's Ex. 44.) General comments about grievances being subject to "arbitration commitments," or about grievances being assigned to the next available arbitrator, are entirely consistent with the presumption that ALPA would continue to serve as a System Board gate-keeper. Finally, the Court notes that both Brodin and Brennaman testified that the supplemental agreement memorialized in the 2002 letter was not intended to impact ALPA's role in determining which pilot grievances would be arbitrated before the System Board.

- 13 -

In those circumstances, the Court finds that Sturge has failed to demonstrate that the CBA provides him with an individual right to compel arbitration.  The provisions in sections 20 and 21 of the agreement unambiguously limit that right to ALPA and Northwest, and nothing in the parties' 2002 supplemental agreement expands that right to individual pilots.  Accordingly, Sturge's complaint is dismissed.

**ORDER**

Based on the Court's Findings of Fact and Conclusions of Law, **IT IS HEREBY ORDERED** that Sturge's complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 30, 2009  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge